FILED by ___ D.C.
ELECTRONIC

**MAR. 21, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO:

# 08-20748-CIV-HOEVELER/BROWN

APPLE CORPS LIMITED and APPLE RECORDS,
INC.,

      Plaintiffs,

v.

FUEGO ENTERTAINMENT, INC., ECHO-FUEGO
MUSIC GROUP LLC, ECHO-VISTA INC., HUGO M.
CANCIO and JEFFREY COLLINS,

      Defendants.

<u>COMPLAINT</u>

    Plaintiffs, Apple Corps Limited and Apple Records, Inc., sue Defendants, Fuego

Entertainment, Inc., Echo-Fuego Music Group LLC, Echo-Vista Inc., Hugo M. Cancio and

Jeffrey Collins, and state:

<u>NATURE OF THE ACTION</u>

    1.  This action arises from Defendants' deliberate and unconscionable effort to trade

on The Beatles' fame and creative endeavors by unlawfully exploiting illicit recordings of

unreleased musical performances of The Beatles purportedly from Hamburg Germany's Star-

Club in 1962.  These bootleg recordings, made without consent, have been promoted by

Defendants against Plaintiffs' objections, through a marketing campaign that makes willful

unauthorized use of trademarks, trade names, performances, and names and likenesses of The

Beatles -- all in a calculated effort by Defendants to enrich themselves at Plaintiffs' expense.

    2.  In so doing, Defendants are subjecting the public to inferior quality recordings of

Beatles performances, made without The Beatles' permission and without their control, which

Dockets.Justia.com

conduct dilutes and tarnishes the extraordinarily valuable image associated with The Beatles and the unprecedented craftsmanship associated with their music.

3.    This is not Defendants' first attempt to release these unauthorized bootleg recordings of performances of The Beatles.  In 1995, Plaintiff refused to provide permission and Defendant Jeffrey Collins agreed that "[o]*bviously, without [plaintiffs'] consent we have absolutely no intention of commercially releasing the album.  We are also willing to sign an undertaking not to do so.*"  Nevertheless, nearly thirteen years later, Mr. Collins -- who was sentenced to three years probation in 1996 for violating New Jersey's sound recording piracy statutes -- has emerged again, this time teaming up with Fuego Entertainment, Inc., in a willful and flagrant disregard for Plaintiffs' rights.

4.    Plaintiffs seek (i) to enjoin Defendants from commercially exploiting the bootleg recordings of The Beatles' performances; (ii) to stop Defendants from wrongfully appropriating Plaintiffs' valuable trademarks, trade names, performances and names and likeness of the members of The Beatles in connection with the marketing, promotion and sale of the illicit bootleg recordings; and (iii) to recover damages from Defendants arising from their willful conduct.

<u>JURISDICTION AND VENUE</u>

5.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338 (a), 1338 (b) as well as pursuant to 15 U.S.C. § 1121.  This Court has supplemental jurisdiction over the asserted state tort claims pursuant to 28 U.S.C. § 1367.

6.    This Court has personal jurisdiction over Defendants pursuant to § 48.193(1)(a) in that Defendants reside in Florida and operate, conduct, engage in, or carry on a business or

business venture in Florida or have an office or agency in Florida, and pursuant to §48.193(1)(b) in that Defendants have committed tortious acts in Florida.

    7.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

PARTIES

    8.   Plaintiff, Apple Corps Limited ("Apple Corps") is an incorporated limited company organized and existing under the laws of the United Kingdom, the issued share capital of which was originally registered in the names of George Harrison, John Lennon, Richard Starkey and Paul McCartney.  On December 8, 1980, John Lennon died.  On November 29, 2001, George Harrison died.  Apple Corps is now owned jointly by G.H. Estate Limited, Yoko Ono Lennon, Sir James Paul McCartney and Richard Starkey, in equal shares. Apple Corps owns the exclusive right by assignment from The Beatles on March 5, 1980 to all merchandising rights of the Beatles and all other intangible rights in the name "The Beatles" and in the likenesses and performances of The Beatles.

    9.   Plaintiff, Apple Records, Inc. is a New York corporation which is wholly owned by Apple Corps.  Apple Records, Inc. and Apple Corps are collectively referred to herein as "Apple".

    10.  Defendant, Fuego Entertainment, Inc. ("Fuego") is a Nevada corporation in default status with a principal place of business located at 8010 NW 156 Terr., Miami Lakes, Florida 33016.  Fuego is a corporation that purports to engage in the production, acquisition, marketing, sales, and distribution of various entertainment products including recorded music. Fuego has a majority ownership stake in the bootleg Beatles recordings at issue here.

    11. Defendant, Hugo M. Cancio ("Cancio") resides in Florida and is Defendant Fuego's Chief Executive Officer, President, Treasurer, Secretary and Director and sole Officer

3

and Director. Cancio personally directed, authorized and approved Defendants' infringing conduct discussed herein.

12. Defendant Echo-Fuego Music Group LLC ("Echo-Fuego") is a Florida limited liability corporation with its principal place of business at 8010 NW 156 Terr., Miami Lakes, Florida 33016. According to Fuego's press release dated January 9, 2008, Echo-Fuego is a joint venture between Fuego and Jeffrey Collins' company, Echo-Vista, Inc. and was formed (according to Defendants website) to merge Echo-Vista's music catalog (including the bootleg Beatles recordings at issue here) into the Echo-Fuego joint venture, with Echo-Vista maintaining an ownership interest therein.

13. Defendant Echo-Vista, Inc. ("Echo-Vista") is a Florida corporation with a principal place of business located at 705 NW 126th Avenue, Coral Springs, Florida 33071. Echo-Vista purportedly owns a catalog of music, including the bootleg Beatles recordings at issue here.

14. Defendant Jeffrey Collins ("Collins") resides Florida and is the Chief Executive Officer of Echo-Vista and the Chief Executive Officer of Echo-Fuego. Collins allegedly obtained possession of the illicit Beatles recordings during the 1960s and has recently joined forces with Cancio and Fuego to release these recordings. Collins has personally directed, authorized and approved of Defendants' infringing conduct discussed herein.

FACTS

A. *Beatles' Fame*

15. The Beatles are the top selling and most famous group of popular musicians and recording artists of all time. The unique and priceless reputation and tremendous good will established by The Beatles is a result of (a) the extensive sales and advertising of hundreds of

4

musical compositions and recordings bearing The Beatles' name; (b) the fame and acclaim surrounding the musical services of The Beatles and the popularity of the motion pictures in which The Beatles have appeared; (c) the widespread public recognition of the name "The Beatles" and the association of that name with the individual owners of Apple; and (d) the unprecedented quality and nature of The Beatles' musical compositions, musical recordings and musical services.

16. The Beatles have garnered every major award, including numerous GRAMMY awards, GRAMMY Lifetime Achievement Awards, an Academy Award, dozens of gold, platinum and multi-platinum recordings, and, in 1988, The Beatles were inducted into the Rock & Roll Hall of Fame.  Through the extraordinary efforts and talents of Sir Paul McCartney, John Lennon, George Harrison and Richard Starkey, this good will associated with The Beatles has given great value to the exclusive right of Apple to exploit THE BEATLES trademark as well as The Beatles' names and likenesses.

17. Through The Beatles' efforts and critically acclaimed professional activities, the substantial use of The Beatles' name, the hugely successful sales of goods and services bearing The Beatles' name, and the world-wide publicity that The Beatles have received and continue to receive, THE BEATLES trademark has acquired secondary meaning and is a strong trademark worthy of the broadest scope of protection.  Over the course of four decades, The Beatles' name has been prominently displayed on record albums, tape cassettes, compact discs and the packaging thereof, and all manner of commercial advertisements, promotional signs and brochures.  It has also been featured in books, newspapers, magazine articles, radio and television news reports, entertainment programming, motion pictures and music videos and in numerous other ways since the 1960s.  The Beatles' name is distinctive and famous and

5

is widely recognized throughout the United States and the world by millions of music fans and consumers alike.

18. In addition to its common law rights, Apple owns three U.S. trademark registrations for THE BEATLES: (1) THE BEATLES (stylized with the distinctive long "T" logo) (registration number 2,066,226) for, among other things, gramophone, audio tape cassettes and compact discs all featuring music; (2) THE BEATLES (registration number 2,820,559) also for, among other things, gramophone, audio tape cassettes and compact discs all featuring music, and (3) THE BEATLES (registration number 1,752,120) for, among other things, posters, pictures, photographic prints, clothing and toys. Apple also owns 13 trademarks registered in the United Kingdom for THE BEATLES.

B. *Beatles' Performances At The Star-Club In 1962*

19. In January of 1962, The Beatles were under a management contract with Brian Epstein. As their manager, Mr. Epstein handled every aspect of The Beatles' professional musical careers, including procuring employment for The Beatles, arranging recording sessions for The Beatles, and negotiating all contracts relating to The Beatles' professional interests.

20. On January 22, 1962, Mr. Epstein, entered into a contract on behalf of The Beatles for their services as performers at the Star-Club in Hamburg Germany for the period April 13th to May 31st, 1962 ("The January 1962 Star-Club Contract"). That contract detailed the parties' rights and obligations pertaining to the performances of The Beatles at the Star-Club, including referencing the band's work schedule and detailing the allowance of 15 minute breaks after every hour played, monthly salary, accommodations, meals, overtime pay, and

6

travel costs. The January 1962 Star-Club Contract does not authorize the recording of any of The Beatles' performances.

21. In April and May of 1962 The Beatles performed for the first time at the Star-Club pursuant to the January 1962-Star-Club Contract. Shortly after The Beatles returned to England after these performances, and as a result of Mr. Epstein's efforts, The Beatles auditioned for EMI's Parlophone label and in June of 1962 were signed by EMI to a recording contract (the "1962 EMI Contract").

22. Paragraph 3 of the 1962 EMI Contract, which Brian Epstein entered into on The Beatles behalf, gave EMI the exclusive right to record any performance of The Beatles and required Mr. Epstein to agree that The Beatles would not permit any third party to record any of their performances in any manner which might be offered to the public.

23. In August of 1962, The Beatles' drummer, Pete Best, was replaced by Ringo Starr.

24. Shortly thereafter, the professional careers of The Beatles skyrocketed with the release of the single "Love Me Do" in October of 1962. The Beatles reached the music charts and were immediately thrust into the limelight in England, including prestige appearances on BBC radio, television appearances in London, better-paid concert engagements, interviews with national music publications, record store signing engagements, photographic sessions and a variety of other promotional activities.

25. Despite obtaining a recording contract with EMI, and achieving new found fame with the release of their popular singles, The Beatles honored an agreement to return to the Star-Club in November and again in December of 1962, performing for the last time at the club on December 31, 1962.

C. *Star-Club Recordings of The Beatles' Performances*

26. The Star-Club began recording performances of musicians at the club in 1963 -- after The Beatles last appeared there. This practice led to a series of record albums issued in Germany with the Star-Club logo. If it had been standard practice for the Star-Club to record bands at the club prior to 1963, there would be many nights of Beatles performances on tape and those tapes would have been released commercially worldwide. However, no such material has been released.

27. Nevertheless, impermissible attempts have been made over the years to release bootleg or surreptitious recordings of performances of The Beatles at the Star-Club. In 1991 Apple successfully stopped Sony Music Entertainment, Inc. and others from releasing *"The Beatles Live at the Star-Club in Hamburg, Germany; 1962 - Vol. I and Vol. II"* in an action in the United States District Court, Southern District of New York captioned *Apple Corps Limited, and Apple Records, Inc. v. Sony Music Entertainment, Inc. et al.*, 91 Civ. 7465.

28. In that matter, defendants attempted to release unauthorized Star-Club performances of The Beatles complete with packaging that made impermissible use of The Beatles trademarks, trade names and names and likenesses. Defendants asserted that the recordings at issue, allegedly from December of 1962, were made with a hand held recorder by a musician named Edward "Kingsize" Taylor, of the musical group Kingsize Taylor and the Dominoes. Taylor claimed to have obtained The Beatles' consent to record their performances in exchange for buying beer for the band.

29. Faced with testimony from Messrs. McCartney, Harrison and Starkey that they never provided such permission, the defendants agreed to the entry of a Consent Order, dated September 14, 1993, permanently enjoining them from exploiting the Star-Club recordings.

8

30. Several years later, Plaintiffs again stopped the unauthorized exploitation of Star-Club performances in a lawsuit initiated in England's High Court of Justice, Chancery Division captioned *George Harrison, James Paul McCartney, Richard Starkey and Yoko Ono Lennon (as executrix of the will of John Winston Ono Lennon) v. Lingasong Music Limited*, (CH 1996 H No: 3983). In that matter, the Court held that Plaintiffs provided no consent to record their performances and that by selling copies of such illicit recordings to the public, defendant had infringed upon Plaintiffs' exclusive rights of reproduction and distribution of their performances.

D. *Defendant Collins' Past Conduct -- 1990s*

31. Collins' conduct in connection with illicit musical recordings is well documented. In 1996 he was sentenced to three years probation on a criminal plea to violating New Jersey's Sound Recording Piracy Statutes in connection with non-Beatles recordings. The Court considered, as an aggravating factor in defendant Collins plea, the need to deter him from violating the law in the future, but the Court accepted the plea in part because Collins' "character and attitude indicate he is unlikely to commit another offense."

32. Shortly before his criminal sentencing, in June of 1995, Collins attempted to manufacture and distribute an unauthorized selection of 15 recorded performances of The Beatles at the Star-Club on an album entitled "*Jammin' With . . . The Beatles '62*" (hereinafter, the "1995 Star-Club Bootleg"). Plaintiffs sent a cease and desist letter advising that The Beatles never authorized the recording of their live performances at the Star-Club and never granted anyone any rights to commercially exploit such material.

33. Collins, then doing business as Dancefloor Distribution and Distinct Music, Inc. responded in July of 1995, stating in part:

9

> "[W]e are more than upset to hear that the Apple Corporation is not willing to work with us on this project. Obviously, without their consent we have absolutely no intention of commercially releasing the album. We are also willing to sign an undertaking not to do so."

34. Collins also sought to sell to Plaintiffs "the set of 'original' Star-Club recordings -- as well as the 'finished' master-tape of *Jammin' with the Beatles '62'* for an acceptable offer commensurate with that of a private collector." Plaintiffs declined the offer to purchase the material in Collins' possession and so advised him in October of 1995.

E. *Defendants' Infringing Conduct -- 2008*

35. For over twelve years, it appeared that Defendant Collins had abided by his 1995 agreement not to exploit the 1995 Star-Club Bootleg. However, on January 10, 2008, Fuego issued a press release announcing that it had "acquired 15 tracks of previously unreleased music" by The Beatles made in 1962 "a short time before their signing with E.M.I." during "the very first time that Ringo Starr actually played with The Beatles 'live' after replacing Pete Best on the drums." Fuego's press release indicated that it acquired the tapes through an association with Collins -- who purportedly came into possession of the tapes in the 1960s -- and stated that the recordings "will be released" under the Echo-Fuego joint venture. The press release stated that the release date "will be announced in the near future."

36. The illicit recorded performances of live performances of The Beatles that Fuego is currently peddling (hereinafter, the "Infringing Recordings") appear to be the same 15 tracks contained on Collins' earlier illicit 1995 Star-Club Bootleg. Indeed, Defendants have announced that the title of the soon-to-be commercial release of the Infringing Recordings is the identical title to Collins' 1995 failed venture.

37. In addition to disclosing Defendants' future plans for the commercial release of the Infringing Recordings, Fuego's January 10th press release announced that sound clips from several of the recordings from the soon to be released album "will soon be available" on Fuego's website.

38. Defendants also promoted the Infringing Recordings on Fuego's website fuegoentertaiment.net. In exchange for a membership fee paid to Defendants, the public was able to join Defendants' "Fuego Plus" site where Defendants offered the ability to preview the Infringing Recordings. Fuego's website included the following sales pitch:

> Learn about the historic Beatles "Lost" tape from the first ever live performance of John, Paul, George and Ringo at the Star Club in Hamburg, Germany and the future Fuego release of these tracks following digital remastering. One full track and 3 clips from the historic "Lost" tape Beatles album to be released soon by Fuego are available now on Fuego Plus. You must be a member of Fuego Plus to listen to this preview of the album.

39. Thus, paid Fuego Plus members could listen, via audio streaming from Fuego's website, to the entire 2 minute 57 second performance of "*I Saw Her Standing There*," 30 seconds of "*Hippy Hippy Shake*," 30 seconds of "*A Taste of Honey*," and 36 seconds of "*Lovesick Blues*." Fuego's website also announces that "Fuego Plus members will be offered the opportunity to purchase the complete digitally remastered CD prior to it's [sic] general release."

40. Defendants also admit, on the Fuego website, that the "tapes are in bad condition after sitting for over 35 years in Mr. Collins collection" and that the tapes have been "processed to remove noise but the sound quality can be improved much more" and prior "to releasing the final album the tapes will be digitally remastered using the latest technology."

11

41. Defendants have also promoted their for-profit Fuego Plus feature to access the illicit recordings through the unauthorized use of THE BEATLES trademarks emblazoned across Fuego's website urging the public to "UPGRADE YOUR MEMBERSHIP TO ACCESS LOST TRACKS NEVER HEARD BEFORE." Defendants used, without consent, Apple's THE BEATLES stylized trademark with the distinctive long "T" (registration number 2,066,226) and thereafter changed to the unauthorized use of Apple's THE BEATLES word mark (registration number 2,820,559). Defendants have also exploited The Beatles' names and likenesses on the Fuego website through the use of a large photograph of The Beatles to market the Infringing Recordings.

42. Defendants do not indicate with any precision in any press release or on Fuego's website how or when the illicit recordings of The Beatles' performances were made. Their website simply notes that tapes of live Beatles performances from the Star-Club were "hand delivered to Mr. Collins by the DJ he had booked into the Star Club the night the recordings were made." In fact, Fuego's website states that the 15 tracks were recorded in "late 1963 at the Star Club" -- a date that is inconsistent with the 1962 date announced in Fuego's press release and is long after The Beatles' last performance at the Star-Club, on December 31, 1962.

43. Nor do Defendants explain the basis of their purported rights to the Infringing Recordings. Fuego only states that the Star-Club "recorded most groups that appeared at their club in the late 50s and early 60s under a performance contract that included payment in full for any live recordings made at their club."

44. First, the Star-Club did not open until 1962; second, The Beatles' either appeared at the Star-Club while under an exclusive June 1962 EMI Contract prohibiting the recording of

12

their performances by third parties, or appeared pursuant to the January 1962 Star-Club Contract which does not authorize the recording of any of The Beatles' performances.

45. On January 16, 2008, Plaintiffs sent a cease and desist letter to Cancio, President and CEO of Fuego, and to Collins, CEO of Echo-Fuego advising that Defendants' plans to commercially exploit unauthorized recordings of The Beatles' Star-Club performances, Defendants' unauthorized audio streaming of The Beatles' performances, and Defendants' unauthorized use of Plaintiffs' trademarks, trade names and the names and likenesses of The Beatles to promote the unauthorized recordings, violated Plaintiffs' rights.

46. Thereafter, Cancio agreed to forward to Plaintiffs' counsel a copy of the Infringing Recordings, but later, "after further consideration and at the request of Mr. Collins," Cancio advised that Defendants would not be forwarding a copy of the unauthorized recordings. Cancio also expressly reserved Defendants' right "to commercially release these recordings in the future."

47. On or about January 28, 2008, Defendants ceased (at least temporarily) streaming the Infringing Recordings to their Fuego Plus members, but continued to reserve their right to do so. On February 2, 2008, Collins provided an interview to the Today Show on CNBC wherein he discussed the Infringing Recordings and Defendants' plans to commercially exploit the recordings.

48. On February 21, 2008, Fuego issued a press release announcing that it has "commenced the digital re-mastering and enhancement process to improve the quality of the historic Beatles' lost tapes in preparation for its future release." The February 21st press release announced further that, once finished, the Infringing Recordings will be released on a

13

CD entitled "Jamming with Beatles and Friends, Star Club, Hamburg, 1962" — essentially the identical title of Collins' 1995 Star-Club Bootleg.

49. Finally, on March 5, 2008, Cancio confirmed that, despite Plaintiffs' objections, Defendants expect to release the illicit recordings commercially and that he welcomes the opportunity to "battle" Plaintiffs in the "public arena."

50. Despite repeated requests, Defendants have refused to provide (i) any information regarding any alleged documentation, including the purported Star-Club performance contract with The Beatles, upon which defendants claim the right to exploit The Beatles' performances; (ii) a copy of the illicit recordings at issue; (iii) the date of the performances at issue; and (iv) any details surrounding the surreptitious recording of those performances.

51. In light of (i) Defendants' intentions to exploit the Infringing Recordings, (ii) their unwillingness to agree to permanently cease such infringing activity, and (iii) given Defendant Collins' track record of reneging on his agreement not to exploit the 1995 Star-Club Bootleg, Plaintiffs have been forced to bring the instant action to protect their rights.

COUNT I - UNAUTHORIZED FIXATION AND TRAFFICKING IN SOUND RECORDINGS

(INJUNCTIVE RELIEF)

52. Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 55.

53. Plaintiffs never authorized the recording of their live performances at the Star-Club and never granted anyone any rights to produce, sell, or otherwise exploit such material. Despite having no permission to do so, and despite Defendant Collins agreeing in 1995 that he would not exploit his recordings of live Beatles' performances, Defendants have taken the illicit recordings of The Beatles' performances and have unlawfully and willfully reproduced

14

copies of such performances from an unauthorized fixation and have transmitted or otherwise communicated to the public in interstate commerce the sounds of those live performances and have distributed, offered to distribute, sold and offered to sell, and trafficked in such illicit recordings in interstate commerce, and have threatened to continue to do so, in violation of 17 U.S.C. § 1101 of the Copyright Act's prohibition on Unauthorized Fixation and Trafficking in Sound Recordings.

54. Defendants have traded upon Plaintiffs' creative labor and have profited from their unlawful conduct. Their actions have damaged Plaintiffs and there is a cognizable danger that Defendants will again exploit the Infringing Recordings in the future unless Defendants' conduct is enjoined. Plaintiffs will suffer irreparable injury which cannot be adequately calculated or compensated by money damages.

55. Plaintiffs have no adequate remedy at law.

## COUNT II - UNAUTHORIZED FIXATION AND TRAFFICKING IN SOUND RECORDINGS

### (DAMAGES)

56. Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 55.

57. Defendants' violation of 17 U.S.C. § 1101 of the Copyright Act has been committed willfully, wantonly, maliciously, and with reckless disregard for Plaintiffs' rights. Plaintiffs have been damaged by Defendants' conduct.

## COUNT III - COMMON LAW COPYRIGHT INFRINGEMENT

### (INJUNCTIVE RELIEF)

58. Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 55.

59. The Infringing Recordings were purportedly recorded in 1962. As such, the sound recordings were fixed prior to February 15, 1972 (the date Congress first extended federal copyright protection to sound recordings) and are therefore subject to common law copyright protection.

60. Plaintiffs possess the exclusive common law copyright in their live performances at the Star-Club and the right to make recordings of their live performances at the Star-Club, and the right to prohibit, permit or otherwise control the exploitation of any such recordings. Having never consented to any recording, nor to any commercial exploitation, of their live performances at the Star-Club, Plaintiffs continue to maintain a valuable property right in those performances and maintain the ability to prohibit the use of those performances.

61. In violation of Plaintiffs' property right and common law copyright, Defendants have appropriated for themselves the fruits of Plaintiffs' creative labor for commercial gain.

62. Defendants' actions have been committed willfully and deliberately in an unconscionable effort to trade off of the good will and reputation of The Beatles and to reap where Defendants have not sown.

63. Defendants' conduct has been damaging to Plaintiffs and there is a cognizable danger that Defendants will again exploit the Infringing Recordings in the future. Unless Defendants' conduct is enjoined, Plaintiffs will suffer irreparable injury which cannot be adequately calculated or compensated by money damages.

64. Plaintiffs have no adequate remedy at law.

16

COUNT IV - COMMON LAW COPYRIGHT INFRINGEMENT

(DAMAGES)

65. Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 64.

66. Defendants' infringement of Plaintiffs' common law copyrights has been committed willfully, wantonly, maliciously, and with reckless disregard for Plaintiffs' rights. Plaintiffs have been damaged by Defendants' conduct.

COUNT V - TRADEMARK INFRINGEMENT

(INJUNCTIVE RELIEF)

67. Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 51.

68. Defendants have used, without authorization, Apple's federally registered trademark THE BEATLES (registration number 2,066,226) and Apple's federally registered trademark THE BEATLES (registration number 2,820,559) in connection with the Infringing Recordings in interstate commerce, including in connection with the marketing, advertising and promotion of the Infringing Recordings.

69. Defendants' use of THE BEATLES name and trademark creates the impression that the Infringing Recordings offered by Defendants originates with and/or is subject to the exceptionally high quality standards of Plaintiffs and that Plaintiffs have endorsed, sponsored or are otherwise affiliated with or are associated with Defendants' product.

70. The use of THE BEATLES name and trademark by Defendants in connection with the Infringing Recordings is likely to cause confusion, mistake or deception by creating a

17

likelihood that the public will perceive that the Infringing Recordings emanates from, or is authorized by, licensed by, sponsored by, or otherwise associated with, Plaintiffs.

71.  Defendants acts and conduct constitutes willful and deliberate infringement of Apple's federally registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114 (1) (a) and (b).

72.  Defendants' conduct has been damaging to Plaintiffs and there is a cognizable danger that Defendants will again exploit THE BEATLES trademarks in the future in connection with the marketing or promotion of the Infringing Recordings and unless Defendants' conduct is enjoined, Plaintiffs will suffer irreparable injury which cannot be adequately calculated or compensated by money damages.

73.  Plaintiffs have no adequate remedy at law.

COUNT VI - TRADEMARK INFRINGEMENT

(DAMAGES)

74.  Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 55 and 68 through 73.

75.  Defendants' trademark infringement has been committed willfully, wantonly, maliciously, and with reckless disregard for Plaintiffs' rights.  Plaintiffs have been damaged by Defendants' conduct.

COUNT VII - FEDERAL UNFAIR COMPETITION

(INJUNCTIVE RELIEF)

76.  Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 55 and 68 through 73.

18

77. Plaintiffs have not authorized anyone to use the tradename and trademark THE BEATLES or BEATLES in connection with the Infringing Recordings, either in the title of the unauthorized recording or in the promotional material for such recording. Nor have plaintiffs granted anyone the right to display, print or otherwise use the names and likenesses of Lennon, McCartney, Harrison and Starkey, either jointly or severally, in connection with the Infringing Recordings. In addition, Plaintiffs have not authorized the Defendants to exploit the musical performances of The Beatles contained on the Infringing Recordings.

78. In the manner set forth above, and in connection with the promotion of the Infringing Recordings and in connection with the audio-streaming of the infringing material on Fuego's website, Defendants have affixed, applied, annexed or used, words, names, false designations of origin, false descriptions and misrepresentations, on promotional material, tending to falsely describe and represent that Plaintiffs have endorsed, sanctioned, approved or otherwise consented to or were involved in Defendants' use of such tradenames, trademarks names and likenesses and performances. In so doing, defendants have acted with knowledge of the falsity of such designation of origin, descriptions and representations and have caused the promotional material and the audio-streamed portion of the illicit recordings to be used in interstate commerce.

79. Defendants have sold and promoted illicit recordings of Beatles' performances through the unauthorized use of The Beatles name, with intent to confuse and deceive the public and thus to obtain public recognition and acclaim for Defendants' product and profit commercially based upon the merit, reputation and good will of Plaintiffs and the high quality of recordings and musical compositions of The Beatles.

19

80. Defendants are being unjustly enriched through their use of unlawful and unfair means they have employed to misappropriate to themselves the value of Plaintiffs' extensive efforts over the course of over four decades of the development of The Beatles' priceless name recognition.

81. Defendants acts and conduct were and are calculated and designed to unlawfully trade upon the popularity, good will, performances, tradenames, trademarks, names and likenesses of Plaintiffs by inducing members of the public to join Fuego Plus for a fee and to listen to the unauthorized recordings and to promote the Infringing Recordings.

82. Defendants' use of these false designations, descriptions and misrepresentations create a likelihood that the public will be confused, misled or deceived into purchasing Defendants' Fuego Plus membership, as well as the Infringing Recordings if released, in the erroneous belief that Defendants are licensees of Plaintiffs, or are authorized, endorsed, sponsored or approved by Plaintiffs, or that the Infringing Recordings are connected or associated in some way with Plaintiffs.

83. The acts and conduct of defendants constitute willful and deliberate violations of Section 43 (a) of the Lanham Act, 15 U.S.C. § 1125(a).

84. The acts and conduct of defendants have damaged plaintiffs and will, unless restrained, further impair the value of THE BEATLES name and trademark as well as the good will associated with plaintiffs while permitting defendants to profit unjustly from plaintiffs' endeavors.

85. Plaintiffs have no adequate remedy at law.

20

<u>COUNT VIII - <span>Federal Unfair Competition</span></u>

(Damages)

86.  Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 55 and 68 through 73.

87.  Defendants' unfair competition has been committed willfully, wantonly, maliciously, and with reckless disregard for Plaintiffs' rights. Plaintiffs have been damaged by Defendants' conduct.

<u>COUNT IX - <span>Common Law Unfair Competition and Trademark Infringement</span></u>

(Injunctive Relief)

88.  Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 55 and 68 through 73.    '

89.  By their activities, the Defendants have appropriated and exploited for their own benefit the result of the expenditures, labor and skill of The Beatles' performances and have traded upon and wrongfully appropriated the value of the name and reputation for artistic excellence of The Beatles and appropriated the market for Beatles' records.

90.  Defendants have engaged in deliberate unfair competition and trademark infringement by exploiting THE BEATLES trademarks and names and likenesses in connection with Defendants' unlawful distribution, sale and trafficking in illicit recordings of performances of The Beatles in commerce without consent.

91.  Defendants' conduct has been damaging to Plaintiffs and there is a cognizable danger that Defendants will again exploit THE BEATLES trademarks in the future in connection with the marketing or promotion of the Infringing Recordings and unless

21

Defendants' conduct is enjoined,  Plaintiffs will suffer irreparable injury which cannot be adequately calculated or compensated by money damages.

92.  Plaintiffs have no adequate remedy at law.

### COUNT X - COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT

#### (DAMAGES)

93.  Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 55 and 68 through 73.

94.  Defendants' common law unfair competition and common law trademark infringement have been committed willfully, wantonly, maliciously, and with reckless disregard for Plaintiffs' rights.  Plaintiffs have been damaged by Defendants' conduct.

### COUNT XI - FEDERAL DILUTION

#### (INJUNCTIVE RELIEF)

95.  Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 55, 68 through 73 and 88 through 92.

96.  Defendants' unauthorized exploitation of THE BEATLES trademarks in connection with the release of portions of the Infringing Recordings in commerce over the Fuego website and their threat to release the entire album commercially has diluted and impaired, and will continue to dilute and impair, the distinctive quality of Plaintiffs' famous protected mark THE BEATLES and has harmed, and will continue to harm, the reputation of Plaintiffs' famous protected mark.

97.  Defendants' acts and conduct relating to the exploitation of THE BEATLES trademark as set forth above, and their continued intention to exploit THE BEATLES trademark, have caused, and will continue to cause, the Plaintiffs' famous mark to lose its

ability to serve as a unique identifier of Plaintiffs' recordings because, if allowed, consumers may no longer perceive THE BEATLES mark as representing a single source or origin.

98.  Defendant's acts and conduct  relating to the exploitation of THE BEATLES trademark as set forth above, and their continued intention to exploit THE BEATLES trademark, have tarnished, and will continue to tarnish, the positive associations and the superior quality associated with THE BEATLES trademark, music and image, due to the admittedly inferior quality of the Infringing Recordings.

99.  Defendants' conduct constitutes a willful and deliberate violation Section 43 of the Lanham Act's Federal Dilution Revision Act of 2006, 15 U.S.C. §1125(c), and is damaging to Plaintiffs and unless Defendants' conduct is enjoined, Plaintiffs will suffer irreparable injury which cannot be adequately calculated or compensated by money damages.

100.  Plaintiffs have no adequate remedy at law.

### COUNT XII - FEDERAL DILUTION

#### (DAMAGES)

101.  Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 55, 68 through 73 and 88 through 92.

102. Defendants' violations of 15 U.S.C. §1125(c) of the Lanham Act have been committed willfully, wantonly, maliciously, and with reckless disregard for Plaintiffs' rights. Plaintiffs have been damaged by Defendants' conduct.

### COUNT XIII - DILUTION AND INJURY TO BUSINESS REPUTATION

#### (INJUNCTIVE RELIEF)

103.  Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 55, 68 through 73 and 88 through 92.

23

104. Defendants' unauthorized exploitation of THE BEATLES trademarks in connection with the release of portions of the Infringing Recordings in commerce over the Fuego website and their threat to release the entire album commercially has diluted and impaired, and will continue to dilute and impair, the distinctive quality of Plaintiffs' famous protected mark THE BEATLES and has harmed, and will continue to harm, the business reputation of Apple.

105. Defendants' acts and conduct relating to the exploitation of THE BEATLES trademark as set forth above, and their continued intention to exploit THE BEATLES trademark, have caused, and will continue to cause, the Plaintiffs' famous mark to lose its ability to serve as a unique identifier of Plaintiffs' recordings because, if allowed, consumers may no longer perceive THE BEATLES mark as representing a single source or origin.

106. Defendants' acts and conduct relating to the exploitation of THE BEATLES trademark as set forth above, and their continued intention to exploit THE BEATLES trademark, are calculated and designed, with predatory intent, to unlawfully trade upon the affirmative associations attached to the famous BEATLES trademark.  In so doing, Defendants have tarnished, and will continue to tarnish, the enormous and unprecedented reputation for quality associated with THE BEATLES trademark, music and image. Defendants have released to the public recordings of The Beatles' performances that are, admittedly, of such poor quality, thereby creating a likelihood of damage to Apple's business reputation.

107. Defendants willfully intended to trade on Plaintiffs' reputation and cause dilution of the famous BEATLES trademark in violation of § 495.151, Florida Statutes. Defendants' conduct has damaged Plaintiffs and there is a cognizable danger that such conduct will

24

continue in the future and unless Defendants' conduct is enjoined, Plaintiffs will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

108. Plaintiffs have no adequate remedy at law.

### COUNT XIV - UNAUTHORIZED PUBLICATION OF NAME OR LIKENESS

(INJUNCTIVE RELIEF)

109. Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 51.

110. Plaintiffs have an exclusive proprietary interest in the publicity value of THE BEATLES tradenames, trademarks and the names and likenesses of the members of The Beatles, both jointly and severally, as well as the attendant exclusive right to utilize or license others to utilize such tradenames, trademarks, names and likenesses for commercial exploitation.

111. By the unauthorized exploitation of THE BEATLES tradenames, trademarks and the names and likenesses of The Beatles in connection with the release of portions of the Infringing Recordings in commerce over the Fuego website and in connection with Defendants' promotion of their threatened release of the entire album commercially, Defendants have deliberately, and without any authorization or consent, misappropriated Plaintiffs' exclusive rights to exploit the names and likenesses of the members of The Beatles, both jointly and severally.

112. Defendants' conduct constitutes a willful and deliberate infringement of Plaintiffs' right of publicity in violation of § 540.08 of the Florida Statutes, and is damaging to Plaintiffs and there is a cognizable danger that Defendants will continue to exploit THE

25

BEATLES tradenames, trademarks and the names and likenesses of The Beatles in connection with the Infringing Recordings and unless Defendants' conduct is enjoined, Plaintiffs will suffer irreparable injury which cannot be adequately calculated or compensated by money damages.

113.  Plaintiffs have no adequate remedy at law.

## COUNT XV - UNAUTHORIZED PUBLICATION OF NAME OR LIKENESS

### (DAMAGES)

114.  Plaintiffs incorporate into this Count the allegations contained in above-paragraphs 1 through 51.

115.  Defendants' violation of § 540.08, Florida Statutes, has been committed willfully, wantonly, maliciously, and with reckless disregard for Plaintiffs' rights.  Plaintiffs have been damaged by Defendants' conduct.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs demand the following relief:

A.      An Order preliminarily and permanently enjoining Defendants, their agents, servants, employees, representatives, attorneys, successors and assigns and all persons, firms, corporations or entities acting under their direction, authority or control, and all persons acting directly or indirectly in concert or participation with any of them from:

(i)  manufacturing, distributing, selling, promoting, copying, licensing, trafficking or otherwise disseminating, exploiting or exposing the public to any recordings of live Beatles' performances at the Star-Club;

(ii)  using, in commerce, the name, tradename or trademark THE BEATLES or any other designation confusingly or deceptively similar to THE BEATLES, in

26

connection with the manufacture, distribution, sale, promotion, copying, license, trafficking or other exploitation of musical recordings or performances of The Beatles, including, but not limited to, the Infringing Recordings;

(iii) diluting the distinctiveness and good will built up by plaintiffs in the trademark THE BEATLES by using the trademark THE BEATLES, or any other designation confusingly or deceptively similar to THE BEATLES, in connection with the manufacture, distribution, license, sale or other exploitation of musical recordings or performances of The Beatles, including, but not limited to, the Infringing Recordings;

(iv) tarnishing the positive associations and the superior quality associated with THE BEATLES trademark, music and image, and harming plaintiffs' reputation by manufacturing, distributing, selling, promoting, copying, licensing, trafficking or otherwise disseminating, exploiting or exposing to the public any recordings of live Beatles' performances at the Star-Club;

(v) committing any acts calculated to cause the public to falsely believe that any of Defendants' Infringing Album or other goods/services of defendants are authorized, sponsored by, or are affiliated with plaintiffs; and

(vi) infringing, or contributing to or participating in the infringement by others of Plaintiffs' exclusive rights in their live performances at the Star-Club;

B.     An Order directing defendants to recall all copies of the Infringing Recordings from all distributors, retailers, promoters, or broadcasters to whom they previously distributed, disseminated or sold the Infringing Recordings;

C.     An Order directing defendants to deliver up for destruction all original tapes, master tapes, copies and any other version, including electronic versions, of the Infringing

27

Recordings and all packaging, promotional material or advertising in their possession or control that relates to the Infringing Recordings;

    D.    An Order directing defendants to provide an accounting of all sales of and profits derived from the sales of the Infringing Recordings and/or any part thereof or any other work utilizing or embodying The Beatles' live performances at the Star-Club;

    E.    That Plaintiffs be awarded actual damages, together with defendants' profits, in an amount to be determined at trial, or, at plaintiffs' election, enhanced statutory damages pursuant to 17 U.S.C. § 504 of the Copyright Act, in an amount not less than One Hundred and Fifty Thousand Dollars ($150,000.00) for each willful infringement of plaintiffs' exclusive rights against unauthorized fixation and trafficking in sound recordings, as to the SECOND claim of relief;

    F.    That Plaintiffs be awarded any and all profits and damages, and that Plaintiffs be awarded enhanced compensatory treble damages, because of Defendants' willful and deliberate acts and conduct, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, as to the SIXTH, EIGHTH and TWELFTH claims of relief;

    G.    That Plaintiffs be awarded actual damages, but not less than Five Million Dollars ($5,000,000.00) together with enhanced or punitive damages in an amount to be determined at trial, but not less than Ten Million Dollars ($10,000,000.00) to deter the willful and deliberately tortious conduct of defendants, pursuant to common law copyright, common law of unfair competition and pursuant to § 540.08 of the Florida Statutes and to avoid future confusion or deception of the public and unfair competition with Plaintiffs, as to the FOURTH, TENTH and FIFTEENTH claims for relief;

H.    That Plaintiffs be awarded their costs, including reasonable attorneys' fees pursuant to § 505 of the Copyright Act, § 1117 of the Lanham Act and § 501.211 of the Florida Statutes; and

I.    That Plaintiffs be granted such other and further relief as the Court deems just and proper.

WOLFE & GOLDSTEIN, P.A.
100 S.E. 2nd Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 381-7115
Facsimile: (305) 381-7116


Richard C. Wolfe
FL Bar No: 355607

MITCHELL SILBERBERG & KNUPP LLP
12 East 49th Street -- 30th Floor
New York, NY 10017
Telephone:    (212) 509-3900
Fax:          (917) 546-7677
By:_____
    Paul V. LiCalsi, Pro Hac Vice App. Pending
    Howard H. Weller, Pro Hac Vice App. Pending


*Attorneys for Plaintiffs*

29

Case 1:08-cv-20748-WCT Document 1-2 Entered on FLSD Docket 03/24/2008 Page 30 of 30

JS 44
(Rev. 12/96)

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED by ___ D.C.
ELECTRONIC

**MAR. 21, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**I.(a) PLAINTIFFS**

APPLE CORPS LIMITED et. al.

**DEFENDANTS**

FUEGO ENTERTAINMENT, INC.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    U.K.
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard Wolfe, esq.
100 S.E. 2nd Street, #3300, Miami

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE,  MONROE,  BROWARD,  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

Docket 08cv 20748 Hoeveler/Brown

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 460 Deportation |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | A☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| | | B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

17 U.S.C. 1101, 15 U.S.C. 1114

LENGTH OF TRIAL
via 5 days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE
3/21/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 977349    AMOUNT $350.00    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____
03/21/08