## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20748-CIV-HOEVELER/BROWN

APPLE CORPS LIMITED and APPLE RECORDS, INC.,

        Plaintiffs,

v.

FUEGO ENTERTAINMENT, INC., ECHO-FUEGO
MUSIC GROUP LLC, ECHO-VISTA INC., HUGO M.
CANCIO and JEFFREY COLLINS,

        Defendants.
_____/

## FUEGO DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION TO SET EMERGENCY HEARING

    Defendants Fuego Entertainment, Inc., Echo-Fuego Music Group LLC and Hugo M. Cancio (collectively, the "Fuego Defendants"), hereby file their Opposition to Plaintiffs' Motion to Set Emergency Hearing on Plaintiffs' Motion for Preliminary Injunction [DE 4], on the grounds that there is no emergency in that the Fuego Defendants: (i) control the master recordings at issue, pursuant to contract, (ii) ceased the conduct of which Plaintiffs complained voluntarily, prior to the filing of this lawsuit, and (iii) already have agreed to maintain the status quo pending resolution of the dispute set forth in Plaintiffs' Complaint. Therefore, not only is there no emergency, there is no need for preliminary injunctive relief, and, in fact, no case or controversy for this Court to decide, as there is no risk of imminent harm to Plaintiffs that would

justify injunctive relief.[1] For these and other reasons set forth herein, this Court should deny Plaintiffs' request for an emergency hearing and allow this case to proceed in an orderly manner.

## INTRODUCTION

This case relates to certain unreleased recordings of live performances of The Beatles in 1962 at the Star Club in Hamburg, Germany, before they became famous. The recordings have tremendous historical significance to collectors, not only because eight of the tracks have never been released by The Beatles in any form, but also because it is believed that these are the first live recordings of the appearance of Ringo Starr on the drums.

The Fuego Defendants obtained the recordings from the owner of the company who was affiliated with the DJs in the Star Club, who has held them, unreleased, for more than 45 years. Therefore, the Fuego Defendants believe that they have lawful possession and ownership of lawfully-made recordings. Plaintiffs (neither of which existed at the time the recordings were made) claim that the recordings were not authorized and want them destroyed.

However, it was not the question of ownership of the recordings that provided the impetus for this lawsuit. Instead, Plaintiffs complained because the Fuego Defendants streamed a small portion of the recordings on their website, in conjunction with The Beatles' stylized trademark. When Plaintiffs requested that the Fuego Defendants stop streaming the recordings and stop using the mark, the Fuego Defendants promptly did so, as a show of good faith in order to enter into good faith negotiations with Plaintiffs to resolve the questions of ownership and release of the recordings.

---

[1] The Fuego Defendants reserve their right to file a brief on the merits of Plaintiff's Motion for Preliminary Injunction [DE 2], pursuant to S.D. Fla. L.R. 7.1, should the Court ultimately decide to proceed with a hearing on that Motion. However, as set forth *infra*, the Fuego Defendants would require significant discovery, including depositions of witnesses in several countries, before filing their response.

Despite the fact that the Fuego Defendants ceased the activities to which Plaintiffs objected within the timeframe Plaintiffs' requested, and agreed not to release the recordings pending the result of negotiations with Plaintiffs, Plaintiffs unilaterally terminated all communications with the Fuego Defendants and then filed this lawsuit more than one month later, after first releasing copies of the Complaint to the media.

Because the Fuego Defendants have ceased the activities to which Plaintiffs objected, and have agreed not to release the recordings in the near future, there is no emergency here. In fact, there is not even any risk of imminent harm to Plaintiffs' alleged rights, as required to justify a grant of injunctive relief. On the contrary, the issue is moot. Therefore, this Court should deny Plaintiffs' request for an emergency hearing.

## FACTUAL BACKGROUND

**1.    The Fuego Defendants' Rights to the Master Recordings.**

In January 2008, Fuego Entertainment, Inc. ("Fuego Entertainment") entered into a joint venture with Jeffrey Collins and his company Echo-Vista Inc. giving the joint venture, Echo-Fuego Music Group LLC ("Echo-Fuego"), exclusive distribution rights to hundreds of musical titles then owned by Collins and Echo-Vista, including the rights to the master recordings of 15 previously unreleased tracks of the Beatles recorded at the Star Club in Hamburg, Germany in 1962 (hereafter, the "Master Recordings"). (See Plaintiffs' Motion for Preliminary Injunction (hereafter "PI Motion")). [DE 2 at ex. L]. The Master Recordings include seven tracks subsequently studio recorded and publicly released by The Beatles through EMI, and eight tracks that have never been released in any form. [DE 2 at ex. M]. For that reason, and because it is believed that the Master Recordings contain the first live performance of The Beatles with Ringo Starr on drums, the Master Recordings are of great historical significance. (Id.).

Fuego Entertainment is the majority shareholder in the Echo-Fuego joint venture. (Declaration of Hugo M. Cancio in support of the Fuego Defendants' opposition to Plaintiffs' motion to set emergency hearing, filed concurrently herewith as Ex. "A" at ¶ 3). The Joint Venture agreement for Echo-Fuego expressly provides that the Master Recordings cannot be publicly released without the consent of Fuego Entertainment as the majority shareholder in the joint venture. (Ex. "A" at ¶ 4).

### 2. The Fuego Defendants' Negotiations with Plaintiffs.

After entering into the joint venture, Fuego Entertainment announced Echo-Fuego's acquisition of the Master Recordings on Fuego Entertainment's website, and made available a small portion of the Master Recordings (consisting solely of live recordings of songs subsequently studio recorded by The Beatles) to subscribers to its Fuego Plus membership. (Ex. "A" at ¶ 5).[2] After making that announcement, the president and CEO of Fuego Entertainment, Hugo M. Cancio, was contacted by Plaintiffs and entered into good faith negotiations with Plaintiffs regarding the questions of ownership and release of the Master Recordings. (Ex. "A" at ¶ 5).

Plaintiffs then requested, by letters and emails sent in January 2008, that as a condition of further negotiations, the Fuego Defendants remove the portions of the Master Recordings then streaming on Fuego Entertainment's website, and cease referring to The Beatles by a particular stylized mark with an elongated "T", by January 31, 2008. (Ex. "A" at ¶ 6; DE 2 exs. Q, R). The Fuego Defendants timely complied with Plaintiffs' request. (Id.).

---

[2] The recordings streamed on the website included one entire track and three 30-second clips of other tracks. (See DE 2 ex. N). Members of Fuego Plus were able to <u>listen</u> to these clips, but could not download or copy them. (See id.). None of the tracks were available to the general public. (Id.)

4

Thereafter, Cancio was encouraged by his receipt of telephone calls from the President of Apple Records which led him to believe that the Fuego Defendants would be able to work out an agreement with Plaintiffs. (Ex. "A" at ¶ 7). Accordingly, Fuego Entertainment subsequently put out a press release, dated February 21, 2008, stating that the Echo-Fuego joint venture was proceeding with digital re-mastering of the Master Recordings in preparation for their "future" release. (Ex. "A" at ¶ 7). (The February 21, 2008 press release is contained in Plaintiffs' Motion for Preliminary Injunction at ex. M [DE 2]). However, in making that statement on behalf of the Fuego Defendants, Cancio did not state, mean, or intend to imply, that the re-mastered Master Recordings would be released in the immediate future. (Ex. "A" ¶ 7). To the contrary, while the Fuego Defendants continue to maintain that they are the rightful and lawful owners of the Master Recordings, Echo-Fuego had no intention of releasing the Master Recordings to the public pending the results of good faith negotiations with Plaintiffs. (Id.).

### 3. Plaintiffs File This Lawsuit Instead of Negotiating.

However, despite the Fuego Defendants' compliance with Plaintiffs' demands, Plaintiffs did not then enter into good faith negotiations with the Fuego Defendants, as promised. Instead, Plaintiffs filed this lawsuit, after first releasing copies of the Complaint to numerous media outlets. Plaintiffs now claim that they need injunctive relief, and request that the Court set an emergency hearing on their preliminary injunction motion, merely because the Fuego Defendants have the "means and capabilities" to distribute the Master Recordings electronically. (DE 4 at ¶ 3). Notably, Plaintiffs do not, and cannot, state either that their rights are currently being violated or that there is imminent danger that their rights will be violated in the immediate future, as is required in this District for a grant of injunctive relief.

Quite simply, there is no emergency here. First, the Fuego Defendants promptly ceased streaming the Master Recordings and using The Beatles' stylized mark to advertise them, upon Plaintiffs' request. Thus, there is no current, on-going violation of Plaintiffs' rights for this Court to address. Second, there is no threat of imminent future harm to Plaintiffs, as the Fuego Defendants, which have the right, pursuant to contract, to control the release of the Master Recordings, have agreed not to do so absent an agreement with Plaintiffs, a decision by a court of competent jurisdiction on the merits of the question of the ownership of the Master Recordings, or other resolution of this lawsuit. (Ex. "A" at ¶¶ 7, 8). Finally, because the Fuego Defendants were willing to enter into good faith negotiations with Plaintiffs on the question of ownership, there is not even a case or controversy for this Court to decide.

## ARGUMENT

Plaintiffs' request for an emergency hearing on their motion for a preliminary injunction should be denied, because there is neither a present nor an imminent risk of harm to Plaintiffs' rights. First, because the Fuego Defendants voluntarily ceased all conduct to which Plaintiffs objected, there is no on-going, present injury for this Court to redress. Second, because the Fuego Defendants contractually control the release of the Master Recordings and have agreed not to release them until the question of ownership is resolved, there is no risk of imminent harm to Plaintiffs, as is required in this District for a grant of injunctive relief. Moreover, because Plaintiffs cannot even demonstrate that they are entitled to injunctive relief, they have no grounds on which to seek preliminary injunctive relief.

    **A.**    **Plaintiffs Do Not Have Standing to Seek Injunctive Relief, Much Less an Emergency Hearing.**

For a party to demonstrate standing to seek injunctive relief within the meaning of Article III's "case or controversy" requirement, that party must establish three elements: (1) injury; (2)

6

causation; and (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Plaintiffs here fail both the injury and redressability elements. Therefore, they are not entitled to preliminary injunctive relief, much less an emergency hearing on a request for same.

The Eleventh Circuit requires a plaintiff seeking injunctive relief to demonstrate "a real and immediate threat of future injury." Elend v. Basham, 471 F.3d 1199, 1207 (11th Cir. 2006) (inability to show threat of immediate harm fails the injury element of standing). Standing for injunctive relief requires that future injury "proceed with a high degree of immediacy." 31 Foster Children v. Bush, 329 F.3d 1255, 1266-67 (11th Cir. 2003). A "perhaps or maybe" chance of an injury occurring, such as Plaintiffs here allege, simply is not enough for Plaintiffs to demonstrate standing to request injunctive relief. Bowen v. First Family Fin. Servs., Inc., 233 F.3d 1331, 1340 (11th Cir. 2000).

Nor is it permissible for a Court to enter an injunction demanding that a party do nothing more than "obey the law," as such an injunction would not satisfy the redressability element for standing. Elend, 471 F.3d at 1209 (finding that such a command would fail both the redressability element of standing and the Rule 65(d) prohibition against vague injunctions).

Because the question of standing focuses wholly on prospective conduct, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). Thus, neither the Fuego Defendants' previous, but discontinued, streaming of portions of the Master Recordings, nor the fact that they have a website, with the "means and capability" to "cause worldwide distribution" of the Master

7

Recordings is sufficient to grant Plaintiffs standing to seek injunctive relief.[3] In fact, Plaintiffs' purported standing to seek injunctive relief is conclusively defeated by the Fuego Defendants' affirmative agreement not to release the Master Recordings, or any portion thereof, or to permit any other person or entity to do so, until either the question of ownership is resolved in court, the parties otherwise reach agreement or other resolution of this lawsuit. (Ex. "A" at ¶ 8). Any injunction issued in the face of that agreement could do no more than impermissibly order the defendants to "obey the law."

The same factors that demonstrate that Plaintiffs do not have standing to request preliminary injunctive relief also conclusively demonstrate that Plaintiffs are not entitled to an emergency hearing on their motion for preliminary injunctive relief.

Moreover, to the extent that Plaintiffs attempt to base their request for an emergency hearing on the peripheral involvement of Jeffrey Collins in this matter, that, too, is baseless. First, as discussed above, Collins has granted Echo-Fuego the exclusive right to control the distribution of the Master Recordings. Because Echo-Fuego is controlled by Fuego Entertainment, its majority shareholder, not by Mr. Collins, and Echo-Fuego has agreed not to release the Master Recordings pending resolution of the question of ownership, Mr. Collins' involvement does not raise any specter of imminent harm to Plaintiffs.

Second, as is clear from Plaintiffs' Complaint, Mr. Collins had possession of the Master Recordings for more than 45 years prior to contracting with Fuego Entertainment, but has **never** released them. (See DE 1 at ¶¶ 14, 31-35). Although Mr. Collins made a prior attempt, more

---

[3] While the Fuego Defendants steadfastly believe they maintain lawful ownership of the Master Recordings and thus any alleged prior conduct consisting of streaming any tracks on their website was not, of course, unlawful, regardless, because the Fugeo Defendants readily ceased all alleged conduct of which Plaintiffs complained, there clearly remains no present adverse effects or imminent danger.

than 10 years ago, to release the Master Recordings **with the cooperation of Plaintiffs** (see DE 1 at ¶ 33), he placed the Master Recordings back in his vault when the attempt failed, rather than either releasing them over Plaintiffs' objections or taking them to the black market, as he easily could have done.  Therefore, the fact that Mr. Collins is involved in the Echo-Fuego joint venture has no bearing whatsoever on whether Plaintiffs may seek an emergency hearing here.  To the contrary, the fact that Mr. Collins has held these tapes for more than 45 years without releasing them demonstrates to the contrary -- there is no imminent planned release that would justify preliminary injunctive relief, much less an emergency hearing on Plaintiffs' request for one.[4]

>    B.    **Because the Fuego Defendants Have Already Complied with Plaintiffs' Demands, Plaintiffs' Request for an Emergency Hearing Is Moot.**

A case becomes moot when circumstances subsequent to the challenged conduct preclude a court from awarding a plaintiff meaningful relief.  Jews for Jesus, Inc. v. Hillsborough County Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998).  A request for injunctive relief is rendered moot where the defendant voluntarily ceases the challenged conduct and the court finds that there is no reasonable expectation that the conduct will resume.  Lockridge v. City of Oldsmar, Fla., 475 F. Supp. 2d 1240 (M.D. Fla. 2007); Snair v. City of Clearwater, 787 F. Supp. 1401 (M.D. Fla. 1992).  This principle applies to alleged violations of intellectual property rights with the same force as in any other context.  See, e.g., Am. Express Travel Related Servs. Co. v. MasterCard Int'l Inc., 776 F. Supp. 787, 790-91 (S.D.N.Y. 1991) (holding that denying injunctive relief as to allegedly infringing television commercial as moot where defendant

---

[4] Moreover, the fact that Mr. Collins pled no contest to a technical violation in another state, on a wholly unrelated matter, more than 10 years ago (see DE 2 at ex. H), has no bearing whatsoever on the questions at issue here, and was included by Plaintiffs solely to prejudice the Court.  In fact, such evidence proffered by Plaintiffs, in addition to being patently irrelevant, is not even admissible under the Federal Rules of Evidence as more than 10 years has elapsed since the date of this alleged technical violation.  Fed. R. Evid. 609(b).

revised allegedly infringing commercial and affirmatively represented that original commercial would not be broadcast in the future).

Here, as in the Am. Express case, the Fuego Defendants voluntarily ceased the allegedly infringing conduct and have affirmatively stated that they will not release the Master Recordings absent either a resolution of ownership issues by a court, an agreement with Plaintiffs or other resolution of this case. That agreement renders Plaintiffs' Motion for Preliminary Injunction moot, as well as Plaintiffs' Motion for Emergency Hearing on their injunction motion.

## CONCLUSION

In the face of the Fuego Defendants' cessation of all allegedly infringing conduct, and their agreement not to resume such conduct absent agreement with Plaintiffs, a decision in Defendants' favor on the merits, or other resolution of this case, the Fuego Defendants respectfully request that this Court deny Plaintiffs' motion for an emergency hearing.

Dated: March 27, 2008　　　　　　　　　Respectfully submitted,
　　　　　Miami, Florida

　　　　　　　　　　　　　　　　　　s/ Michael D. Joblove
　　　　　　　　　　　　　　　　　　Michael D. Joblove
　　　　　　　　　　　　　　　　　　mjoblove@gjb-law.com
　　　　　　　　　　　　　　　　　　Jonathan Perlman
　　　　　　　　　　　　　　　　　　jperlman@gjb-law.com
　　　　　　　　　　　　　　　　　　Catherine A. Van Horn
　　　　　　　　　　　　　　　　　　cvanhorn@gjb-law.com
　　　　　　　　　　　　　　　　　　Michael Trauben
　　　　　　　　　　　　　　　　　　mtrauben@gjb-law.com
　　　　　　　　　　　　　　　　　　Genovese Joblove & Battista, P.A.
　　　　　　　　　　　　　　　　　　Bank of America Tower
　　　　　　　　　　　　　　　　　　111 Southeast Second Street, 44th Floor
　　　　　　　　　　　　　　　　　　Miami, Florida 33131
　　　　　　　　　　　　　　　　　　Telephone: (305) 349-2300
　　　　　　　　　　　　　　　　　　Facsmile: (305) 349-2310
　　　　　　　　　　　　　　　　　　Attorneys for Defendants Hugh M. Cancio,
　　　　　　　　　　　　　　　　　　Fuego Entertainment, Inc. and Echo-Fuego
　　　　　　　　　　　　　　　　　　Music Group LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

          **s./ Michael D. Joblove**
          _____
          Attorney

**SERVICE LIST**

**Apple Corps Limited and Apple Records, Inc. v. Fuego Entertainment et al.
CASE NO.: 08-20748-CIV-HOEVELER/BROWN**

Michael D. Joblove, Esq.
mjoblove@gjb-law.com
Jonathan E. Perlman, Esq.
jperlman@gjb-law.com
Catherine Van Horn, Esq.
cvanhorn@gjb-law.com
Mike Trauben, Esq.
mtrauben@gjb-law.com
GENOVESE JOBLOVE & BATTISTA, P.A.
Bank of America Tower, 44th Floor
100 Southeast Second Street
Miami, Florida  33131
Telephone:    (305) 349-2300
Facsimile:    (305) 349-2310
*Attorneys for Defendants Fuego Entertainment,
Inc., Echo-Fuego Music Group LLC and
Hugo M. Cancio*

Richard C. Wolfe, Esq.
rwolfe@wolfelawmiami.com
Wolfe & Goldstein
100 S.E. 2nd Street
Suite 3300
Miami, Florida  33131
Telephone:    (305) 381-7115
Facsimile:    (305) 381-7116
*Attorneys for Plaintiffs Apple Corps Limited and
Apple Records*

Howard Weller, Esq.
hhw@msk.com
Paul LiCalsi, Esq.
pvl@msk.com
Mitchell Silberberg & Knupp LLP
12 E. 49th Street
30th Floor
New York, New York  10017
Telephone:    (212) 509-3900
Facsimile:    (917) 546-7677
*Attorneys for Plaintiffs Apple Corps Limited and
Apple Records*